IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT E. BRACKETT,

        Plaintiff,

vs.                                                    CIVIL NO. 97-1597 LFG/RLP

PRESTO MANUFACTURING CO.,
a Mississippi corporation,

        Defendant.

## MEMORANDUM AND ORDER
## DENYING MOTION TO DISMISS

THIS MATTER is before the Court on Defendant's Motion to Dismiss filed February 18, 1998 [Doc. 5]. The Court considered the motion, response and reply and determines that oral argument is not necessary. This matter may be resolved based on the parties' submissions.

### Applicable Rule 12(b)(6) Standards

A motion to dismiss simply tests the sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6). At this stage of the proceedings, the court expresses no opinion on the merits of the claim, but simply determines whether the plaintiff may seek relief based on the allegations in his complaint. If the complaint states a viable claim, it is not dismissed at this early stage of the proceedings. In considering a motion filed under Fed. R. Civ. P. 12(b)(6), a court is required to accept the unproven allegations as true. Further, the court is required to construe the allegations in the complaint in the light most favorable to a plaintiff. Because of the legal constraints applicable on Rule 12 motions, they are infrequently granted. Clement v. American Greetings Corp., 636 F. Supp. 1326, 1322 (S.D. Cal. 1986). With these standards in mind, the Court turns to the allegations of the complaint.

## **Plaintiff's Allegations**

Plaintiff, Robert E. Brackett ("Brackett"), alleges that he sought employment with Presto Manufacturing Company ("Presto") and secured a temporary position in August 1995. Complaint, ¶¶ 4, 5). At the time he secured employment, Brackett advised Presto that although he did not use marijuana, tests of his urine showed consistent positive readings for metabolites of tetrahydro-cannabinol ("THC"), the active ingredient in marijuana smoke. (Complaint, ¶ 4). Brackett contends that he is neither addicted to nor does he use marijuana, although, some years before, he did use marijuana. (Complaint, ¶ 9). Brackett contends that he is occasionally passively exposed to marijuana smoke, and he further suffers from seizure disorder, high cholesterol and heart disease and takes medications for these conditions. He theorizes that as a result of one or more of these facts, or for some other unknown reason, he routinely produces "false positive" results for THC metabolites when given a urine test. (Complaint, ¶ 9).

Brackett contends that he became a full-time employee in December 1995 and, in January 1996, he was directed by Presto to submit to a urine test for drugs. The urine test produced a positive result for THC metabolites. (Complaint, ¶ 6). The following month, February 1996, Brackett was directed to submit to another urine test and this test, as well, produced a positive finding for THC metabolites. (Complaint, ¶ 7). As a result of the February test, Presto gave Brackett the option of producing a clean urine test, submitting to drug counseling or being terminated. (Complaint, ¶ 8). Brackett contends that due to his impairment (that is, the tendency to produce false positive results for THC metabolites), he is unable to give a clean urine sample. He contends that since he neither uses nor is addicted to marijuana, drug rehabilitation would have no effect on his ability to give a clean urine sample. Because he could not produce a "clean" urine test, and because

2

he declined drug rehabilitation, Brackett was terminated. (Complaint, ¶¶ 11, 12).

Brackett contends that he is able to perform the essential requirements of the position from which he was fired without an accommodation. He further contends that Presto regards him as having an impairment, i.e., drug addiction because of his urine test readings. He claims that he is a qualified individual with a disability under 42 U.S.C. § 12111, and that he was terminated from his employment in violation of the protections afforded by 42 U.S.C. § 12101 *et seq.*, the Americans With Disabilities Act of 1990 ("ADA").

## Analysis

The ADA was designed to "level the playing field" for the countless thousands of American workers who have one or more physical or mental disability. Schmidt v. Methodist Hosp. of Indiana, Inc., 89 F.3d 342, 344 (7th Cir. 1996). It is part of a congressional plan for correcting illegitimate inequities faced by disabled individuals. Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928, 934 (7th Cir. 1995). The statute does prevent an employer from unlawfully discriminating against a disabled worker under certain circumstances. Notwithstanding the salutary purposes of the Act, the ADA is not intended to be a job insurance policy, Hedberg v. Indiana Bell Telephone Co., Inc., nor is it a civil service statute. EEOC v. Flasher Co., 986 F.2d 1312 (10th Cir. 1992). An employer may still discipline, suspend, fire or refuse to hire individuals who cannot or will not perform the essential requirements of the job. Similarly, if an employee engages in misconduct and is terminated for reasons unrelated to a physical impairment, the ADA offers no protection to the employee. "[T]he ADA does not . . . erect an impenetrable barrier around the disabled employee, preventing the employer from taking any employment actions vis-a-vis the employee." Siefken v. Village of Arlington Heights, 65 F.3d 664 (7th Cir. 1995).

In Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170 (10th Cir. 1996), the court described the elements of an ADA claim. A plaintiff must show (1) that [he] is a disabled person within the meaning of the ADA; (2) that [he] is able to perform the essential functions of the job with or without reasonable accommodations; and (3) that the employer terminated [him] because of [his] disability." Id. at 1173. In this present motion, Presto contends that Brackett failed to establish these elements and, consequently, the claim must be dismissed.

Turning to the first requirement, Brackett must show that he is disabled within the meaning of the ADA. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one of more of the major life activities of such individual; . . . or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Here, Brackett contends in paragraph 10 of the Complaint, that he is regarded by Presto has having an impairment, i.e., drug addiction and that he therefore falls within the definition.

The ADA does not protect current users of illegal drugs. See 42 U.S.C. § 12114(a); 29 C.F.R. § 1630.3(a). Indeed, the legislative history makes clear that congressional intent was not to provide protection to those partaking of illegal drugs or, more important, to hamstring the efforts of employers to have a drug-free environment. The ADA's congressional history shows that Congress in no way intended to foreclose an employer from developing policies to prohibit an employee's use of illicit drugs or from having a sound drug policy. Nor did Congress seek to prevent an employer from engaging in drug testing or from making employment decisions based on the results of drug tests. For example, set forth below is a series of questions posed by Senator Coats to Senator Harkin during the legislative debate on the ADA.

| | |
|---|---|
| Mr. Coats: | Can an employer refuse to hire a job applicant or discharge or discipline an employee who is an addict and who is also currently using illegal drugs or alcohol without violating the act? |
| Mr. Harkin: | Yes. |
| Mr. Coats: | I realize that the act does not take a position endorsing employee testing, but under the ADA can an employer use drug testing as a means of determining whether the employee is currently using illegal drugs?  Can the employer fire or discipline the employee if through testing it is determined that the employee is using illegal drugs? |
| Mr. Harkin: | Yes. |
| Mr. Coats: | What if the addict has been rehabilitated or is under treatment for addition--can that employee be fired if he or she no longer uses illegal drugs or alcohol? |
| Mr. Harkin: | No. |
| Mr. Coats: | Is the employer under a legal obligation under the act to provide rehabilitation for an employee who is using illegal drugs or alcohol? |
| Mr. Harkin: | No, there is no such legal obligation. |

A & P 135 Cong. Record D956,*510777.  Indeed, Senator Harkin's explanation is instructive:

> The new language assures employers that they need not worry about having to defend actions brought by casual drug users, who are not covered under the act.  The act does protect drug addicts who are not current users and we all agree that people who use controlled substances under medical supervision are unaffected by this provision of the act.  With respect to drug testing, the ADA explicitly states that nothing in the act prohibits or restricts either drug testing or employment decisions taken on the basis of such drug tests.  Therefore, an applicant who is tested and not hired because of a positive test result for illegal drugs, or an employee who is tested and is fired because of a positive test result for illegal drugs, does not have a cause of action under the ADA.  If an employer performed a test which actually measured the current use of illegal drugs and the test was positive for the use of illegal drugs, the applicant or employee has no protection under the ADA.  It is not a question of the employer having a defense in an action by the applicant or employee.  The employer needs no such defense in an action by the applicant

>or employee.  The employer needs no such defense because the applicant or the employee has no cause of action.

The legislative history reflects a congressional concern about creating a safe harbor relating to some instances of drug use or perceived drug use.  The safe harbor provides coverage under the ADA to the following:  a former drug addict who is not currently using drugs, an individual prescribed an illegal substance for medicinal reasons, or, finally, an individual who can demonstrate that he is erroneously regarded as engaging in the use of illegal drugs.  Brackett alleges that he falls under the last safe harbor provision.  See 42 U.S.C. § 12114(b)(3); 29 C.F.R. § 1630.3(b)(3).

Brackett alleges he was terminated because his employer considered him a marijuana user when, in fact, he had not used marijuana.  Brackett points to Presto's option of having him submit to another urine drug test or submit to drug counseling as evidence that Presto believed him to be addicted to drugs.  Brackett alleges that when he was hired, he advised Presto that although he did not use marijuana, tests of his urine have a tendency to show consistent positive reading for metabolites of THC.  He alleges that he was given a urine test twice, and twice his test showed positive, just as he advised Presto it would.  Though aware of Brackett's physiologic reason for testing positive in a urine test, Presto offered no other type of drug test.  Brackett contends he neither uses nor is he addicted to marijuana, and drug rehabilitation would have no effect on his ability to give a clean urine sample.  Because Brackett could not produce a "clean" urine test, and because he declined drug rehabilitation, Brackett was terminated.  The Court finds that Brackett has met the first requirement of the Lowe test.

Turning to the second requirement, Brackett must show that he is able to perform the essential functions of the job with or without reasonable accommodations.  Here, Brackett is not

requesting a reasonable accommodation. The opposite is true, he alleges that he is able to perform the functions of his former employment without accommodation. Thus, he meets the second <u>Lowe</u> requirement.

The last requirement under <u>Lowe</u> is that Brackett must show Presto terminated him because of his disability. Brackett alleges, and this Court must accept his contention as true, that he was terminated because of his disability. Brackett claims that he was terminated because of the positive urinalysis and his refusal to enter a drug treatment program. Presto's explanation for Brackett's termination goes to the results of the drug test and his decision not to take the option provided: to take another test or to go for drug rehabilitation.

While it is true that an employer may terminate a disabled employee for legitimate, non-discriminatory reasons, <u>see</u> <u>Williams v. Widnall</u>, 79 F.3d 1003, 1007 (10th Cir. 1996), the employer, nevertheless, may not require an employee to accept an unnecessary accommodation. In the instant action, both of the reasons for Brackett's termination correspond to Presto's belief that Brackett was using illegal drugs. The Court finds that Brackett meets the third <u>Lowe</u> requirement.

This case is similar to <u>Jones v. Corrections Corporation of America</u>, 933 F. Supp. 1384 (D. Kan. 1998). In that case, Jones tested positive for marijuana. His employer told Jones to enter drug treatment and submit to regular drug testing if he wished to remain in their employ. Jones refused and was terminated based on the positive drug test and his unwillingness to pursue treatment. The Court found that Jones stated an ADA claim because he was terminated based on his employer's erroneous belief of drug use. The same holds true here. The Court finds that Brackett's complaint establishes each element of the <u>Lowe</u> test and, therefore, Brackett has made a prima facie claim under the ADA.

Suffice to say, that based on the allegations of the complaint, Brackett has stated a cause of action and Presto's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

COUNSEL FOR PLAINTIFF:
David A. Thomsen, Esq.

COUNSEL FOR DEFENDANT:
Virginia Anderman, Esq.