IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT E. BRACKETT,

        Plaintiff,

vs.                                                         CIVIL NO. 97-1597 LFG/RLP

PRESTO MANUFACTURING CO.,
a Mississippi corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Presto Manufacturing Company's ("Presto") Motion for Summary Judgment [Doc. 26]. In accord with the district's motion practice rule, the motion, response and reply were simultaneously filed. Oral argument is not necessary. This matter may be resolved based on the parties' submissions.

### Background

Plaintiff, Robert E. Brackett ("Brackett"), brings this action pursuant to the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et. seq.* He contends that he was terminated from his employment in violation of law. Brackett was a Presto employee. Presto wishes to maintain a drug-free working environment and, threfore, adopted a company-wide drug-testing policy. When Brackett tested positive for THC metabolites during routine drug screening, Presto gave Brackett the option of producing a clean urine test, submitting to drug counseling, or being terminated. Brackett contends that due to his impairment, that is, the tendency to produce false results for THC

metabolites, he is unable to give a clean urine sample. Brackett claims that he is neither addicted to nor is he a present user of marijuana. He contends that he is occasionally "passively exposed" to marijuana smoke, and, further, suffers from seizure disorder, high cholesterol and heart disease, and takes medication for these conditions. He theorizes that as a result of one or more of these facts, or for some other unknown reason, he routinely produces "false positive" results on drug screening tests. Specifically, he claims that tests of his urine show positive readings for metabolites of tetrahydrocanabal ("THC"), the active ingredient in marijuana smoke.

Brackett contends that since he neither uses nor is he addicted to marijuana, drug rehabilitation would have no effect on his ability to produce a clean urine sample, therefore, he declined drug rehabilitation. Because of his positive drug test and refusal to participate in counseling, Brackett was terminated.

Brackett contends that he is able to perform the essential requirements of his position without an accommodation, and, further, that Presto regards him as having an impairment, i.e., drug addiction, because of the positive test findings. Based on the foregoing, Brackett seeks damages as a result of claimed violations of the ADA.

### **Prior Motion to Dismiss**

Earlier in this litigation, Presto sought dismissal of Brackett's claims pursuant to Fed. R. Civ. P. 12(b)(6), claiming that the complaint failed to state a cause of action. In construing a 12(b)(6) motion, a court is required to accept the unproven allegations of the complaint as true. Further, the court is required to construe the allegations in the complaint in a light most favorable to a plaintiff. At a 12(b)(6) stage of proceedings, the court expresses no opinion on the merits of a claim, but simply determines whether a plaintiff may seek relief based on the allegations properly pled in the

complaint. Because of the legal constraints applicable in considering Rule 12 motions, they are infrequently granted. Clement v. American Greetings Corp., 636 F. Supp. 1326, 1322 (S. D. Ca. 1986).

Finding that Brackett's complaint withstood 12(b)(6) scrutiny, the Court denied Presto's motion to dismiss. The denial of a motion to dismiss does not preclude a party from further testing the validity of the claims by way of summary judgment.

## **Undisputed Facts**

In support of its motion for summary judgment, Presto provides the following undisputed material facts:

> 1. Plaintiff alleges in his Complaint that he "routinely" gives false positive tests for THC metabolites (the metabolites of marijuana) for unknown reasons. Complaint ¶ 9. He does not know if he has a medical condition that causes the positive test results; he considers it a "possibility." Exhibit A, Deposition of Plaintiff, pp. 48-49.

> 2. Prior to being tested at Presto, Plaintiff had had only one documented test that was positive for THC, which was in 1994. While Plaintiff was in the Navy during 1974-78 and 1981-82 (Exhibit A, Plaintiff's Deposition, p.7), Plaintiff had drug tests but did not learn the results. Exhibit A, Plaintiff's Deposition, pp. 54-55. The only other time that Plaintiff was administered a formal test by a testing laboratory prior to going to work for Presto was in 1994 when he worked for Hillger Oil Company. He was advised following that test that he tested positive for THC metabolites. Exhibit A, Plaintiff's Deposition, pp. 61-62.

> 3. Plaintiff has no medical condition that substantially limits his ability to perform major life activities, including work. Exhibit A, Plaintiff's Deposition, pp. 87-88. He currently works full-time as a dishwasher in a hotel. Exhibit A, Plaintiff's Deposition, p. 88. Plaintiff is able to perform the essential requirements of the position he held at Presto without any accommodation. Complaint ¶ 10.

4. Plaintiff was hired at Presto in August 1995 as a temporary employee. He learned that if he was given a full-time position he would be given a drug test, but Presto had no formal drug policy at that time. He was put on permanent status in January of 1996. Exhibit A, Plaintiff's Deposition, p. 50.

5. Presto Manufacturing Company is engaged in the manufacture of small appliances. Employees of Presto are required to work around heavy and potentially dangerous machinery and must be able to devote full attention to their work for their own safety and the safety of others. While employed at Presto, Plaintiff worked in the casting department first as a degater (operating a machine that trims metal components) then as a die cast machine operator. In his job, Plaintiff was required to run heavy machinery and was in contact with molten metal. See Exhibit B, Deposition of Tom Bernicke, pp. 4-5.

6. On January 19, 1996, Plaintiff provided a urine sample to the laboratory designated by Presto. Plaintiff listed the medications he was taking at that time and certified that the specimen was provided by him had not been altered. See Exhibit A, Plaintiff's Deposition, p. 127, and Exhibit C. The test was reported as positive for marijuana metabolites. See Exhibit 6 to Affidavit of James A. Callies, Exhibit I.

7. When the test results were presented to Plaintiff, Plaintiff denied the use of marijuana. Plaintiff told the plant manager, Tom Bernicke, that he thought the positive test was related to his medications and that he was talking to his doctors about changing his medications. He also provided information to Mr. Bernicke about how urine tests can provide false results. Exhibit A, Plaintiff's Deposition, pp. 113-14. At some point during their discussions, Plaintiff presented Mr. Bernicke with a doctor's note from 1994 about Plaintiff's "persistent positive drug screens." See Exhibit D. At that time, Mr. Bernicke, not knowing any better, took Plaintiff's information at face value. Exhibit B, Bernicke Deposition, p. 20.

8. In the summer of 1996, Presto gave notice to its employees that it would be implementing a formal written drug-testing program, effective January 1997. Plaintiff was concerned and was told to wait and see what happened on the test. Exhibit A, Plaintiff's Deposition, pp. 110-11.

9. On February 20, 1997, Plaintiff provided a urine sample to the same lab as in 1996 and again identified the medications he was taking

at that time. He signed the form indicating that the specimen had been provided by him and had not been altered. See Exhibit E. Presto received test results showing that Plaintiff tested positive for benzodiazepine (Valium) and marijuana metabolites.

10. Plaintiff again denied the use of marijuana. He presented a doctor's note stating that he had been prescribed Valium for medical reasons, and Presto accepted this as an adequate explanation for the presence of benzodiazepine. See Exhibit F. Additionally, Plaintiff provided a note from a psychologist. Exhibit G. However, none of the information Plaintiff presented to Presto established any medical reason for the positive THC results.

11. Following implementation of the new formal drug testing policy, all positive drug tests were directed to the corporate office in Eau Claire, Wisconsin for review. Presto wanted to be sure that the policy was applied in a uniform manner so as to avoid any charges of unfairness, discrimination, or disparate treatment. Exhibit H, Affidavit of Ralph Murphy, ¶¶ 3, 7.

12. Presto did an investigation of Plaintiff's test results and his evidence and could find no medical or scientific reason for a positive drug screen other than the actual presence of THC metabolites. Exhibit H, Murphy Affidavit, ¶¶ 4-7.

13. James Callies is the Director of Quest Diagnostics in San Diego, the lab that ran the drug tests of Plaintiff's urine samples in 1996 and 1997. Mr. Callies reported to Presto, upon inquiry by Presto, that other than the recent use of marijuana, only a medical prescription for Marinol or ingestion of food products containing seeds and oil from hemp plants could cause a urine test to be positive for THC metabolites. Exhibit I, Callies Affidavit, ¶ 7.

14. Under the Presto drug policy, Plaintiff was given the option of seeking counseling or losing his employment. Plaintiff refused to participate in the prescribed counseling and was terminated for failing to comply with Presto's drug policy. Exhibit H, Murphy Affidavit, ¶ 6.

15. Presto did not view Plaintiff as having a drug addiction. Presto was concerned about Plaintiff's unexplained evidence of current drug use and sought to apply its new drug policy fairly and consistently. Exhibit, Murphy Affidavit, ¶ 7.

(Presto's Memorandum Brief in Support of Motion for Summary Judgment, pp. 3-6).

In addition, Brackett concedes that the foregoing facts are not in dispute and seeks only to add additional undisputed facts to the affect that Brackett was a good worker and that Brackett's supervisor never saw him impaired by alcohol or illegal drugs. Finally, Brackett seeks to add as a disputed material fact that he does not use and has not used marijuana.

### **Summary Judgment Standards**

Summary judgment is appropriately entered when the moving party can demonstrate by an affirmative showing of evidence that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Firemen's Fund, Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment must shoulder the initial burden of establishing the absence of a question of fact. Adickes, 398 U.S. at 154. That burden is carried when the moving party demonstrates by way of admissible evidence, by deposition, answers to interrogatories, admissions, affidavits or documentary evidence that the undisputed facts entitle the moving party to judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). Once the moving party makes a *prima facie* showing of its entitlement to judgment, the burden shifts to the party opposing the motion to demonstrate the presence of a genuine issue for trial. Bacchus Industries, Inc. v. Arvin Industries, Inc., 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not discharge its burden by simply relying on its pleadings or mere argument or contention. Rather, the opposing party must set forth specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Celotex Corp., 477 U.S. at

324. Indeed, this requirement is made specifically clear in the rule itself.

> [A]n adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56.

Thus, the burden on the party opposing a motion for summary judgment is significant when the moving party has made a *prima facie* showing. The test is not whether the adverse party will be able to demonstrate a genuine issue at trial, but, rather, whether the adverse party can demonstrate the presence of a genuine issue of material fact in response to the moving party's *prima facie* showing.

### Brackett's Failure to Demonstrate a Material Dispute

In his response in opposition to the motion for summary judgment, Brackett submits three brief statements, including the assertion that he was a good worker; secondly, that his supervisor never saw him impaired; and, third, his statement that he does not use marijuana. The first two of these statements do not rise to the level of a material dispute.

To support his claim that he does not use marijuana, Brackett submitted a report from PGP Polygraph/Interviewing Service. This is a report of a polygraph examination administered to Brackett prior to the time he filed suit in federal court. The polygrapher's opinion is that Brackett was truthful when he denied using marijuana between January 1, 1995 and the date of the examination, December 16, 1997. The obvious purpose of the report is to buttress Brackett's testimony that he did not use marijuana. At his deposition, the following interchange occurred.

7

| | | |
|---|---|---|
| QUESTION: | Prior to the positive drug tests that you had in March of 1994, when was the last time prior to that that you had ever used, personally, marijuana? | |
| ANSWER: | I never personally used marijuana. | |
| QUESTION: | You never had, even to this date, you've never smoked it? | |
| ANSWER: | I have simulated smoking it, but I've never smoked it. | |
| QUESTION: | You've never smoked it in any form? | |
| ANSWER: | No, ma'am. | |
| QUESTION: | Have you ever eaten anything containing marijuana, to your knowledge? | |
| ANSWER: | Not to my knowledge, but I'm sure there's been some brownies somewhere along the way. | |
| QUESTION: | But, nothing you identified in March of 1994? | |
| ANSWER: | Nothing I could identify right off, no. | |
| QUESTION: | You also said that you were exposed to marijuana at people's houses, is that right? | |
| ANSWER: | Yes. | |

Deposition, pp. 65-66.

Prior to Brackett's submission of the polygrapher's report, Brackett did not request an evidentiary hearing under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), nor did Brackett submit any affidavit from anyone in the scientific community or proffer any evidence from which the Court could measure the reliability of PGP Polygraph/ Interviewing Service's polygraph techniques and results. No evidence was submitted, for example, on (1) whether the polygraph techniques utilized by PGP Polygraph/Interviewing Service can or have been tested;

8

(2) whether the techniques have been subjected to peer review; (3) whether there is a known or potential error rate for the techniques; (4) whether PGP Polygraph/Interviewing Service recognized or maintained standards controlling the technique's operation; and, (5) whether the testing techniques have gained general acceptance in the scientific community.  Id.

In 1997, the Tenth Circuit determined that a Daubert analysis was required on the issue of admissibility of polygraph evidence.  United States v. Call, 129 F.3d 1402 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 2064 (1998).  Prior to the United States v. Call decision, the Tenth Circuit consistently held that polygraph testimony offered for the purpose of showing that one is truthful, was inadmissible.  United States v. Hall, 805 F.2d 1410 (10th Cir. 1986).  Indeed, this is the very purpose for which Brackett seeks to introduce the polygrapher's report.  Subsequent to the Supreme Court's decision in Daubert, the Tenth Circuit retreated from the "general acceptance test" previously adopted in Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923), and adopted the Daubert framework for analyzing the admissibility of the proffered polygraph evidence.  Even with this modification in the court's approach, the Tenth Circuit cautioned "[O]ur holding does not suggest a new found enthusiasm for polygraph evidence.  We caution that our application of Daubert polygraph evidence does not imply that polygraph examinations satisfy the requirements of Rule 702."  Id. at 129 F.3d 1405.

Brackett failed to request any evidentiary hearing, failed to submit any affidavit from any member of the scientific community, and failed to proffer any evidence from which the Court could, on its own, review the proffered scientific evidence so as to determine compliance with the Daubert standards.  Before the evidence can be admitted, the Court is required to "carefully and meticulously" review the proffered scientific evidence.  Robinson v. Missouri Pacific, 16 F.3d 1083, 1089 (10th Cir.

9

1994). Here, there is nothing to review and the Court has no basis to make any factual findings regarding the Daubert standards or whether the polygraph examination would satisfy the requirements of Fed. R. Evid. 702.[1] Under these circumstances, the Court is constrained, at this stage of proceedings, to strike the polygrapher's report from Brackett's response, and declines to afford any consideration to the polygrapher's report.

Rule 56 requires that the non-moving party "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Here, Brackett fails to shoulder his burden.

With the exception of the the previously mentioned three statements submitted, Brackett concedes that the facts are not in dispute, thus, this litigation is ripe for summary disposition.

## Analysis

The elements of an ADA claim are outlined in the Tenth Circuit's decision in Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170 (10th Cir. 1996). There, the court noted that a plaintiff must show: (1) that [he] is a disabled person within the meaning of ADA; (2) that [he] is able to perform the essential functions of a job with or without reasonable accommodation; and, (3) that the employer terminated [him] because of [his] disability. Id. at 1173.

Brackett's claim survived Presto's 12(b)(6) motion primarily because Brackett's complaint stated that Brackett was disabled. The ADA defines "disability" as "A physical or mental impairment that substantially limits one or more of the major life activities of such individual; . . . or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Brackett claimed that Presto regarded him as having an impairment, i.e. drug addiction, and, therefore, he came within the

---

[1] In the polygrapher's report, it is noted "all polygraph examinations were conducted in accordance with NM Rule 707." This rule is state rule of evidence. Federal courts do not have a corresponding rule on polygraph examinations.

disability definition outlined by the ADA. While the Court was required to accept Brackett's contention as true for 12(b)(6) purposes, there is no such requirement for Rule 56. Indeed, the undisputed facts in this case demonstrate as follows, "Presto did not view Plaintiff as having a drug addiction. Presto was concerned about Plaintiff's unexplained evidence of current drug use and sought to apply its new drug policy fairly and consistently." Statement of Undisputed Material Facts, ¶ 15, Exhibit H, Murphy Affidavit, ¶ 7.

Thus, with undisputed evidence that Presto did not regard Brackett as having an impairment, the burden is on Brackett to demonstrate that he is disabled within the meaning of ADA. That is, that he has a physical or mental impairment that substantially limits one or more of his major life activities. Again, the undisputed facts of this case demonstrate that Brackett does not come within the ADA's definition of disability. The facts in this case demonstrate as follows:

> Plaintiff has no medical condition that substantially limits his ability to perform major life activities, including work. Exhibit A, Plaintiff's Deposition, pp. 87-88. He currently works full-time as a dishwasher in a hotel. Exhibit A, Plaintiff's Deposition, p. 88. Plaintiff is able to perform the essential requirements of the position he held at Presto without any accommodation. Complaint, ¶ 10.

Statement of Undisputed Material Facts, ¶ 3.

With this evidence being undisputed, Brackett simply cannot demonstrate that he is a disabled person within the meaning of ADA. At most, Brackett contends that he has a propensity to give false positive tests for THC metabolites for unknown reasons. Brackett has proffered alternative theories and possible explanations for his positive test findings. Brackett, however, fails to provide any admissible, scientific or medical evidence in support of his assumptions. Nor does Brackett challenge, through any admissible expert testimony, the undisputed facts submitted by Presto. Those facts are

11

as follows:

6. On January 19, 1996, Plaintiff provided a urine sample to the laboratory designated by Presto. Plaintiff listed the medications he was taking at that time and certified that the specimen was provided by him had not been altered. See Exhibit A, Plaintiff's Deposition, p. 127, and Exhibit C. The test was reported as positive for marijuana metabolites. See Exhibit 6 to Affidavit of James A. Callies, Exhibit I.

7. When the test results were presented to Plaintiff, Plaintiff denied the use of marijuana. Plaintiff told the plant manager, Tom Bernicke, that he thought the positive test was related to his medications and that he was talking to his doctors about changing his medications. He also provided information to Mr. Bernicke about how urine tests can provide false results. Exhibit A, Plaintiff's Deposition, pp. 113-14. At some point during their discussions, Plaintiff presented Mr. Bernicke with a doctor's note from 1994 about Plaintiff's "persistent positive drug screens." See Exhibit D. At that time, Mr. Bernicke, not knowing any better, took Plaintiff's information at face value. Exhibit B, Bernicke Deposition, p. 20.

9. On February 20, 1997, Plaintiff provided a urine sample to the same lab as in 1996 and again identified the medications he was taking at that time. He signed the form indicating that the specimen had been provided by him and had not been altered. See Exhibit E. Presto received test results showing that Plaintiff tested positive for benzodiazepine (Valium) and marijuana metabolites.

10. Plaintiff again denied the use of marijuana. He presented a doctor's note stating that he had been prescribed Valium for medical reasons, and Presto accepted this as an adequate explanation for the presence of benzodiazepine. See Exhibit F. Additionally, Plaintiff provided a note from a psychologist. Exhibit G. However, none of the information Plaintiff presented to Presto established any medical reason for the positive THC results.

11. Following implementation of the new formal drug testing policy, all positive drug tests were directed to the corporate office in Eau Claire, Wisconsin for review. Presto wanted to be sure that the policy was applied in a uniform manner so as to avoid any charges of unfairness, discrimination, or disparate treatment. Exhibit H, Affidavit of Ralph Murphy, ¶¶ 3, 7.

> 12. Presto did an investigation of Plaintiff's test results and his evidence and could find no medical or scientific reason for a positive drug screen other than the actual presence of THC metabolites. Exhibit H, Murphy Affidavit, ¶¶ 4-7.
>
> 13. James Callies is the Director of Quest Diagnostics in San Diego, the lab that ran the drug tests of Plaintiff's urine samples in 1996 and 1997. Mr. Callies reported to Presto, upon inquiry by Presto, that other than the recent use of marijuana, only a medical prescription for Marinol or ingestion of food products containing seeds and oil from hemp plants could cause a urine test to be positive for THC metabolites. Exhibit I, Callies Affidavit, ¶ 7.

The foregoing are all undisputed. Brackett offers neither scientific nor medical evidence in support of his contention that his urine produces positive findings for marijuana metabolites for reasons other than the ingestion of marijuana.

The undisputed evidence in this case demonstrates that Brackett was given the option of seeking drug counseling or losing his employment. Brackett refused to participate in counseling and was therefore terminated for failure to comply with Presto's drug policy. He was not terminated because of any disability.

The ADA's legislative history makes clear that Congress did not intend to foreclose an employer from developing policies that prevent an employee's use of illicit drugs or from having a sound drug policy. Congress did not ban employers from engaging in drug testing or from making employment decisions based on the results of drug tests. As indicated in the Court's prior memorandum, the colloquy between Senator Coats and Senator Harkin during the legislative debate on ADA makes clear that Congress was not limiting an employer's prerogatives to implement company-wide drug testing:

| | |
|---|---|
| Mr. Coats: | Can an employer refuse to hire a job applicant or discharge or discipline an employee who is an addict and who is also currently using illegal drugs or alcohol without violating the act? |
| Mr. Harkin: | Yes. |
| Mr. Coats: | I realize that the act does not take a position endorsing employee testing, but under the ADA can an employer use drug testing as a means of determining whether the employee is currently using illegal drugs? Can the employer fire or discipline the employee if through testing it is determined that the employee is using illegal drugs? |
| Mr. Harkin: | Yes. |
| Mr. Coats: | What if the addict has been rehabilitated or is under treatment for addiction--can that employee be fired if he or she no longer uses illegal drugs or alcohol? |
| Mr. Harkin: | No. |
| Mr. Coats: | Is the employer under a legal obligation under the act to provide rehabilitation for an employee who is using illegal drugs or alcohol? |
| Mr. Harkin: | No, there is no such legal obligation. |

A & P 135 Cong. Record D956, *510777.

Indeed, Senator Harkin's explanation is instructive:

> The new language assures employers that they need not worry about having to defend actions brought by casual drug users, who are not covered under the act. The act does protect drug addicts who are not current users and we all agree that people who use controlled substances under medical supervision are unaffected by this provision of the act. With respect to drug testing, the ADA explicitly states that nothing in the act prohibits or restricts either drug testing or employment decisions taken on the basis of such drug tests. Therefore, an applicant who is tested and not hired because of a positive test result for illegal drugs, or an employee who is tested and is fired because of a positive test result for illegal drugs, does not have a cause of action under the ADA. If an employer performed a test which actually measured the current use of illegal drugs and the test was positive for the use of illegal drugs, the applicant or employee has

14

> no protection under the ADA. It is not a question of the employer
> having a defense in an action by the applicant or employee. The
> employer needs no such defense in an action by the applicant or
> employee. The employer needs no such defense because the applicant
> or the employee has no cause of action.

The legislative history reflects a congressional concern about creating safe harbor relating to drug use. Specifically, a former drug addict who is not currently using drugs, or a former drug addict who can demonstrate that he has been prescribed the illegal substance for medicinal reasons, or, finally, an individual who can demonstrate that he is erroneously regarded as engaging in the use of illegal drugs, is entitled to relief under the ADA.

This is not to say that an employer is precluded from drug testing. Indeed, the legislative history supports an employer's establishment of drug-free working environments and promotes policies, and case law supports drug testing to accomplish this salutary goal. For example, in <u>Buckley v. Consolidated Edison Co. of New York, Inc.</u>, 127 F.3d 270 (2nd Cir. 1997), the court stated:

> The ADA provides that it is not a violation of the statute for an
> employer to "adopt or administer reasonable policies or procedures,
> including but not limited to drug testing, designed to ensure that
> [former drug users are] no longer engaging in the illegal use of drugs."
> 42 U.S.C. § 12114(b). Thus, it is not unlawful for employers to
> require that their employees take drug tests. Nor is it illegitimate for
> employers to require that employees with a history of addiction submit
> to more frequent testing than other employees.

It is undisputed that Presto terminated Brackett as a result of his positive drug test and his refusal to submit to drug counseling. Termination for this reason is not a violation of ADA. As Senator Harkin explained in the legislative debate on ADA, the termination of an employee who tests positive for illegal drug use is not a discriminatory act covered under the ADA. Here, it is clear that Presto acted on the basis of a positive drug test and did not act precipitously or unreasonably.

Rather, Presto's actions were in accord with a legitimate goal of having a drug-free workplace and taking action against someone who provides evidence of current illegal drug use. Collings v. Longview Fibre Company, 63 F.3d 828, 834 (9th Cir. 1995), *cert. denied*, 516 U.S. 1048 (1996).

In the circuit's recent decision in McGuinness v. University of New Mexico School of Medicine, 1998 WL No. 97-2249 777070 (unpublished decision)(10th Cir. Nov. 4, 1998), the Tenth Circuit made clear that the type of impairment claimed by Brackett does not constitute a disability under the ADA.

> In employment cases, we have held that an individual does not suffer a disability under the ADA if his disability does not prevent him from performing "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Siemon v. AT&T Corporation, 117 F.3d 1173, 1176 (10th Cir. 1997)(quoting 29 C.F.R., § 1630.2(j)(3)(1). For example, in MacDonald v. Delta Airlines, Inc., 94 F.3d 1437 (10th Cir. 1996), we held that an airline mechanic whose impaired vision prevented him from taxiing aircraft was not disabled under the ADA because he was only disqualified from "a single, particular job." Id. at 1445; see also Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994)(stating that working "does not necessarily mean working at the job of one's choice."). By analogy, Mr. McGuinness must demonstrate that his anxiety impedes his performance in a wide variety of disciplines, not just chemistry and physics. This he has failed to do.

Id. at 1998 WL 777070*3.

The evidence is unrefuted that the alleged propensity to test positive does not limit Brackett's ability to perform major life activities, including work. He is able to perform all the essential requirements of the position he previously held, and, indeed, is currently employed. Thus, even if Brackett had been able to establish a disability under the meaning of ADA, he cannot establish the limitation on his ability to perform major life activities.

16

It is beyond dispute that the type of work in which Brackett was engaged was rife with the potential for injury. Presto manufactures appliances and employs work with heavy and potentially dangerous machinery, molten metals, blast furnaces, die cast, and metal trimming machines. To ensure the safety of its employees, it is perfectly reasonable to expect that Presto would adopt, as part of its safety program, a requirement that all employees be drug free. There is nothing suspect in Presto's adoption or administration of its company-wide drug-free program. Indeed, it is a step intended to provide for the safety and welfare of employees.

In sum, the Court determines that Presto has made a *prima facie* showing of entitlement to summary judgment; Brackett has failed to rebut the *prima facie* showing with admissible evidence; and the Court concludes that Presto is entitled to judgment as a matter of law.

                                        */s/ Lorenzo F. Garcia*
                                        Lorenzo F. Garcia
                                        United States Magistrate Judge

COUNSEL FOR PLAINTIFF:
David A. Thomsen, Esq.

COUNSEL FOR DEFENDANT:
Virginia Anderman, Esq.